IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 13-cv-1097-WJM

KAREN ELLEN MURRAY,

    Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Karen Ellen Murray ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income benefits and disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for supplemental security income benefits and disability benefits is AFFIRMED.

## I.  BACKGROUND

Plaintiff was born on March 7, 1958 and was 50 years old on the alleged disability onset date. (Admin. Records ("R.") (ECF No. 9) at 77.) Plaintiff claimed disability due to bipolar disorder, schizophrenia, depression, and obesity. (*Id.*) She later added pain in her lower back and right shoulder to her list of claimed impairments.

(*Id.* at 251.) Plaintiff has a tenth grade education and worked as a cashier, fast food worker, and receptionist. (*Id.* at 70, 221.)

Plaintiff filed an application for supplemental security income and an application for disability insurance benefits on September 3, 2009. (*Id.* at 13.) The applications were denied on May 17, 2010 and, upon a request for a hearing, Plaintiff's claims were heard by ALJ Lowell Fortune on December 1, 2011. (*Id.*) Plaintiff, medical expert Dr. Thomas E. Atkins, and vocational expert Ashley Bryars testified at the hearing. (*Id.*)

On December 16, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] (*Id.* at 13-26.) At step one, the ALJ found that Plaintiff had not sustained her burden of proving that she had not engaged in substantial gainful activity since December 3, 2008. (*Id.* at 15-16.) The ALJ, however, proceeded through the five-step sequential evaluation process. (*Id.* at 16.) At step two, he found that Plaintiff suffered from the severe impairments of "affective disorder (bipolar disorder vs. depressive disorder); anxiety disorder, not otherwise specified (NOS); polysubstance abuse/dependence; rotator cuff sprain; and obesity." (*Id.*) The ALJ did not find Plaintiff's gastric bypass surgery residuals or knee pain to be severe impairments. (*Id.*) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

2

listed in the social security regulations. (*Id.* at 17.) The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she had the RFC to perform "light" work as defined by the regulations, except as follows:

> Regarding the operation of hand controls, the claimant is able to frequently push and pull with the right upper extremity. With regard to operation of foot controls, the claimant is able to frequently push and pull with the right lower extremity. The claimant is able to frequently reach overhead with the right upper extremity. She should avoid all exposure to the following hazards and activities: dangerous machinery and unprotected heights. In addition, the claimant is able to frequently climb ramps and stairs, but should avoid climbing ladders, scaffolds, and ropes. Mentally, the claimant cannot engage in work requiring hyper-vigilance. She cannot perform any work involving safety operations or direct responsibility for the safety of others. Lastly, the claimant should not have any direct access in the workplace to alcohol or illegal drugs.

(*Id.* at 18-19.)

At step four the ALJ found that Plaintiff was capable of performing past relevant work as a cashier, fast food worker, and receptionist. (*Id.* at 25.) Therefore, the ALJ did not proceed to step five.

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (*Id.*) The Appeals Council denied Plaintiff's request for review. (R. at 1.) Thus, the ALJ's December 16, 2011 decision is the final administrative action for purposes of review.

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at1084.  Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

On appeal, Plaintiff raises three issues: (1) the ALJ did not properly assess Plaintiff's symptoms; (2) the ALJ did not properly weigh the treating physician's medical opinion; and (3) the ALJ failed to include limitations related to all of Plaintiff's impairments in the RFC. (ECF No. 13 at 5.) The Court will address each of Plaintiff's arguments in turn.

**A.   Credibility of Plaintiff's Testimony**

Plaintiff argues that the ALJ failed to base his findings regarding Plaintiff's credibility on substantial evidence. (ECF No. 13 at 21.)

"Credibility determinations are peculiarly the province of the finder of fact, and [this Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the

evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Plaintiff cites *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), for the proposition that the ALJ must cite the specific relevant evidence he relies upon in regard to the credibility of a plaintiff's testimony. (ECF No. 13 at 21-22.) The Court notes that *Kepler* has not been interpreted to require a formalistic factor-by-factor recitation of the evidence. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). As set forth below, the Court finds that the ALJ's decision in this case satisfies the requirements described in *Kepler*.

Here, the ALJ found Plaintiff's complaints to be less than fully credible for four reasons. First, the ALJ determined that Plaintiff's claims of debilitating symptoms were inconsistent with Plaintiff's conduct. (*Id.* at 20.) The record evidence shows that Plaintiff worked at several jobs during the adjudication process. (*Id.*) She worked in a convenience store between May and August 2010, at a grocery store between August 2010 and March 2011, and then a Subway sandwich shop until the day before the hearing. (*Id.* at 41-42, 57, 59-60, 258, 267.) Plaintiff also lived alone, was able to care for herself, and interacted socially with others. (*Id.* at 417-18.) Based on this record, the ALJ determined that "[t]he fact that [Plaintiff] is able to engage in essentially normal daily and social activities discredits her allegations of disabling symptoms." (*Id.* at 20.)

Second, the ALJ found that Plaintiff's credibility was undermined by inconsistent statements regarding her hallucinations, use of alcohol, and use of illegal drugs. (*Id.* at

21.) The record evidence shows that Plaintiff gave inconsistent statements regarding when her hallucinations began. (*See id.* at 67 (testifying that that her auditory hallucinations began in high school), 330 (reporting to Dr. Willett, plaintiff's treating psychiatrist, that they began in the mid-1990s), 418 (reporting to Dr. Doss that they began during adolescence).) The record also shows that Plaintiff gave inconsistent statements regarding her use of alcohol. (*See id.* at 54 (testifying that she drank one liter of wine every three days between 2009 and 2010), 419 (reporting to Dr. Doss in February 2010 that she only drank two alcoholic beverages every two weeks), 292 (drinking a liter of wine every two days in March 2009), 295 (drinking three boxes of wine per week in May 2009), 336 (reporting that she wanted to cut back drinking in July 2009), 339 & 368 (drinking a box of wine per day in August 2009).) The records also reveals that Plaintiff gave inconsistent statements regarding her illegal drug use. (*See id.* at 43 (Plaintiff testified that the only illegal drug she used was methamphetamine), 313 (showing Plaintiff has a history of cocaine use).)

Third, the ALJ found that Plaintiff's evidence during the hearing wasn't credible because her attorney asked her leading questions. (*Id.* at 21.) Plaintiff argues that since the Federal Rules of Evidence do not apply in social security hearings, leading questions are not objectionable. (ECF No. 13 at 25.) While Plaintiff's argument is technically correct, it "does not mean that an ALJ cannot consider that a claimant's testimony was led by counsel. An ALJ may consider that counsel was asking leading questions in assessing a claimant's credibility because leading may impact credibility." *Cheney v. Colvin*, 2014 WL 1268575, at *2 (D.S.C. Mar. 26, 2014). The hearing

transcript shows that Plaintiff was asked leading questions regarding her hallucinations causing paranoia (*id.* at 59), the sedative effect of Seroquel (*id.*), and dizziness during panic attacks (*id.* at 62-63).

Finally, the ALJ discredited Plaintiff's credibility based on a finding that Plaintiff had a personal interest in the outcome of the matter. (*Id.* at 21.) The Court finds this to be an error. "The ALJ's reliance on Plaintiff's status as a disability claimant to doubt credibility has no support in pertinent case law or Social Security Rulings and was improper." *Lucero v. Colvin*, 2014 WL 1292859, at *6 (D. Colo. Mar. 27, 2014). "Indeed, every disability claimant has a similar 'pecuniary motive' and most seek medical evidence and legal counsel." *Id.*; *see also Murillo v. Colvin*, 2013 WL 5434168, at *12 (C.D. Cal. Sept. 27, 2013) ("Generally speaking [ ] every claimant who applies for benefits seeks pecuniary gain, and this fact does not indicate a lack of credibility.") (quotation omitted); *Ratto v. Sec'y, Dept. of Health & Hum. Servs.*, 839 F. Supp. 1415, 1428-29 (D. Or. 1993) (noting that "[i]f the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant . . . would be found credible"). Since the ALJ's other reasons for discounting Plaintiff's credibility are supported by substantial evidence, the Court finds this error to be harmless.[2] *See Butler v. Astrue*, 410 F. App'x 137, 139 (10th Cir. 2011) ("We agree with Mr. Butler that

---

[2] Plaintiff argues that remand is appropriate because when "several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." (ECF No. 13 at 22 (quoting *Bakalarski v. Apfel*, 131 F.3d 151 (10th Cir. 1997).) Here, however, the ALJ's only error was discounting Plaintiff's credibility based on her status as a disability claimant. Since the ALJ's other reasons for discounting Plaintiff's credibility are supported by substantial evidence, the Court is not persuaded by Plaintiff's argument.

it is not clear why the ALJ thought his testimony about his work at Home Depot was contradictory. But we need not address this issue, because the ALJ's other reasons provide substantial evidence to support the credibility determination."); *Buckner v. Colvin*, 2014 WL 29109 (D. Kan. Jan. 3, 2014) ("[I]f this were the only error in the ALJ's credibility determination, the court would likely find that Ms. Buckner's report was largely cumulative of Plaintiff's allegations and that any error in failing to specifically discuss it was harmless.").

Accordingly, in considering the record and the ALJ's credibility analysis, the Court finds that the ALJ applied the correct legal standards in making his determination of Plaintiff's credibility, and his conclusions were supported by substantial evidence in the record. *See Diaz*, 898 F.2d at 777 (credibility determinations are the province of the ALJ and will be upheld provided that they are supported by substantial evidence).

## B.    Weighing of Medical Opinions

Plaintiff contends that the ALJ erred by not giving controlling weight to the opinion of Dr. Allan Willett, Plaintiff's treating psychiatrist.[3] (ECF No. 13 at 11-18.)

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). An ALJ may disregard that opinion, however, if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record.

---

[3] Plaintiff also argues that it was error for the ALJ to give "no weight" to Dr. Willett's opinion. (ECF No. 13 at 12.) The ALJ, however, did not give "no weight" to Dr. Willett's opinion, he merely granted it "less weight" than the medical opinions of Drs. Doss, Sexton, and Atikins. (R. at 23-24.)

*See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(c)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing SSR 99-2p, 1996 WL 374188 (July 2, 1996)).

A finding that a treating doctor's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96–2p, 1996 WL 374188, at *4 (July 2, 1996). Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations omitted).

Here, the ALJ determined that Dr. Willett's medical opinion was not entitled to "controlling weight" because it was not "consistent" with "the other substantial evidence" in the record. (*Id.* at 24.) He gave the opinion "less weight" than he gave to the other physicians' opinions, finding that the other opinions were "more consistent with the

longitudinal record." (*Id.* at 23.)  He also found that Dr. Willett's opinion "overstate[s] the claimant's functional limitations[.]" (*Id.*)  The ALJ stated that "[i]t appears from a reading of the medical records that [Dr. Willett] accepted at face value the statements made and symptoms reported by [Plaintiff]." (*Id.* at 24.)  Since the ALJ found that Plaintiff's allegations were not credible, he was "unable to give any significant weight" to Dr. Willett's opinion.[4]  (*Id.*)

Dr. Willett opined that Plaintiff experienced moderate to marked functional limitations due to her mental impairments.  (*Id.* at 598-600.)  Dr. Willett further opined that Plaintiff's use of alcohol and drugs increased her symptoms, but that, even if she was abstaining, she would still experience marked limitations.  (*Id.* at 599.)  Conversely, Dr. Thomas E. Atkin, the medical expert, testified during the hearing that, without drug and alcohol abuse, Plaintiff would have mild to moderate limitations, and that with substance abuse, she would experience moderate to marked limitations.  (*Id.* at 36.)

Dr. Willett also opined that Plaintiff's ability to function varied widely with her mental status, and that when she was depressed and hallucinating she could not attend work or function, but that she did well on other days.  (*Id.* at 598.)  The State Agency psychologist, however, determined that Plaintiff's limitations would not preclude her from working.  (*Id.* at 91.)  Similarly, Dr. Atkin testified that Plaintiff "could work consistent with what she's worked in the past."  (*Id.* at 36.)

Dr. Atkin also testified that Dr. Willett's opinion was inconsistent with the treatment notes from the Jefferson Center for Mental Health.  (*Id.* at 39).  A review of

---

[4] Since the Court has already determined that the ALJ did not err in its credibility determination regarding Plaintiff's symptoms, it need not re-evaluate that issue here.

those notes shows that Plaintiff's Global Assessment of Functioning ("GAF") scores were 55-60, which is reflective of moderate symptoms or moderate difficulty in social/occupational functioning. (*Id.* 18, 423, 425-29, 430-47.)

On this record, the Court finds that the ALJ applied the correct legal standard and considered many of the factors required by the regulations, including that Dr. Willett was Plaintiff's treating psychiatrist, that his opinion was not supported by the record, and that there were inconsistencies between Dr. Willett's opinion and the record as a whole. *See* 20 C.F.R. § 404.1527. Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of Dr. Willett's opinion, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record. *See Lax*, 489 F.3d at 1084. Therefore, the Court finds no error in the ALJ's weighing of the Dr. Willett's medical opinion.

**C.     Plaintiff's Non-Severe Impairments**

Plaintiff argues that the ALJ erred by not including limitations related to all of Plaintiff's impairments, both severe and non-severe, in his findings regarding Plaintiff's RFC. (ECF No. 13 at 5.) Plaintiff also argues that the ALJ failed to fully develop the record regarding Plaintiff's physical impairments and to establish the extent of her alleged low intellectual functioning. (*Id.*) The Court will take each of Plaintiff's arguments in turn.

1.     <u>Limitations Regarding Non-Severe Impairments</u>

In determining the scope of a claimant's RFC, the ALJ's assessment must

"consider all of [a claimant's] medically determinable impairments . . . , including [her] medically determinable impairments that are not severe[.]"  20 C.F.R. § 404.1545.  An impairment is medically determinable if it is "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. § 404.1508.  "Symptoms" are defined as a claimant's own subjective complaints, "signs" as observable "anatomical, physiological, or psychological abnormalities which . . . must be shown by medically acceptable clinical diagnostic techniques," and "laboratory findings" as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  20 C.F.R. § 404.1528.

Plaintiff challenges the RFC, arguing that it should have included limitations resulting from her shoulder impairment (rotator cuff), residuals of gastric bypass surgery (residual incontinence), and knee pain (possible torn meniscus), which were not found to be severe at step 2 of the sequential evaluation process.  (ECF No. 13 at 19-20.)  Plaintiff also argues that her borderline intellectual functioning should have been included in the ALJ's analysis.  (*Id.* at 20.)

During the RFC analysis, the ALJ discussed Plaintiff's claimed right shoulder pain, knee pain, and residual incontinence (*Id.* at 19-20, 23), and included limitations on Plaintiff's use of her right upper extremity and limitations on climbing ladders, scaffolds, and ropes (*Id.* at 18-19).  Therefore, the Court finds that the ALJ properly considered these medically determinable impairments when assessing the RFC.  *See* 20 C.F.R. § 404.1545.

As to Plaintiff's borderline intellectual functioning, the Court finds that the ALJ did

not err by not considering it in its RFC analysis because Plaintiff failed to meet her burden. Plaintiff "has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). While an ALJ has a duty to develop the record, "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.* The record indicates that, although Dr. Doss noted that "[Plaintiff's] replies to the cognition questions suggested borderline intellectual functioning" (R. at 419), Plaintiff never raised the issue with the ALJ and the record lacks any signs, symptoms, or findings supporting this alleged impairment.. Accordingly, Plaintiff's alleged borderline intellectual functioning was not a medically determinable impairment, and the ALJ was not required to assess its limitations in his RFC analysis.

    2.    <u>Consultative Exam</u>

Plaintiff also argues that the ALJ should have ordered a consultative evaluation in order to fully develop the record to determine whether these impairments were severe. The Tenth Circuit has stated that an ALJ "has broad latitude in ordering a consultative examination." *Diaz*, 898 F.2d at 778. Where there is "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation," the ALJ should order a consultative examination to determine whether a claimant is disabled under the Act. *Hawkins*, 113 F.3d at 1167.

Here, Plaintiff's attorney requested a consultative examination.[5] (R. at 73). The record shows that Plaintiff's knee pain did not begin until August 2011, four months before the hearing. (*Id.* at 684.) The ALJ determined that the evidence failed to demonstrate that Plaintiff's knee pain had persisted or was expected to persist for twelve consecutive months as required by 20 CFR §§ 404.1509 and 416.909. (*Id.* at 16.) The ALJ determined that "the weight of the evidence of record does not establish that any additional examination is necessary to enable [him] to make a disability decision." (*Id.* at 16-17.) The Court agrees. Therefore, the Court finds that the ALJ did not err in failing to request a consultative examination regarding Plaintiff's knee pain, and the ALJ's RFC assessment was sufficiently supported by substantial evidence in the record.

The ALJ also did not err in failing to order a consultative examination to evaluate Plaintiff's arm pain or residual incontinence. The record evidence shows that her incontinence never occurred during her work activities. (*Id.* at 65.) As for Plaintiff's shoulder pain, the ALJ determined that Plaintiff's rotator cuff sprain was a severe impairment. (*Id.* at 16.) Therefore, a consultative examination would not have impacted the ALJ's determination.

As to Plaintiff's alleged borderline intellectual functioning, Plaintiff's counsel never requested such an examination. "In the absence of such a request by counsel, [courts] will not impose a duty on the ALJ to order a consultative examination unless the

---

[5] Although the Record is not clear as to what type of consultative examination Plaintiff's counsel requested ( R. at 73 ("ATTY: Just whether you're going to order a consultative examination . . . probably orthopedic."), the ALJ states that her attorney requested a consultative examination to evaluation Plaintiff's knee pain (*Id.* at 16.)

need for one is clearly established in the record." *Hawkins*, 113 F.3d at 1168.  Here, there is no indication in the record that Plaintiff's counsel identified any area of inquiry requiring a consultative examination regarding Plaintiff's borderline intellectual functioning.

Accordingly, the Court finds that the ALJ did not err in failing to request a consultative examination, and the ALJ's RFC assessment was sufficiently supported by substantial evidence in the record.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits.  The Clerk shall close this case and enter judgment in favor of Defendant.

Dated this 23rd day of June, 2014.

BY THE COURT:

_____
William J. Martinez
United States District Judge